Stephenson Land Company v. Commissioner.
Stephenson Land Co. v. Commissioner
Docket No. 5453.
United States Tax Court
1946 Tax Ct. Memo LEXIS 195; 5 T.C.M. (CCH) 361; T.C.M. (RIA) 46108; May 13, 1946
*195 William J. Murray, C.P.A., 3160 Second Blvd., Detroit 1, Mich., for the petitioner. A. J. Friedman, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income tax, declared value excess profits tax and excess profits tax for 1941, and a deficiency in income tax and an over-assessment in excess profits tax for 1942 against Stephenson Land Company, as follows: Declared value excess
Excess profits tax
Year
Income Tax
profits tax
Deficiency
Over-assessment
1941
$2,729.55
$2,296.03
$6,535.29
1942
246.85
$359.57
The petitioner does not contest any of the respondent's adjustments for the year 1942. The sole issue now in controversy is whether there should properly be included in the petitioner's net operating loss deduction for 1941 an amount carried over from 1939 as a bad debt deduction sustained in that year. Another issue concerning the right to carrybacks of net losses and unused excess profits credits from subsequent years has been conceded by the respondent and the amount thereof can be determined in the recomputation under Rule 50. Findings of *196 Fact The petitioner is a Michigan corporation with its principal place of business in Detroit, Michigan. The returns for the years involved were filed with the collector of internal revenue for the district of Michigan. During all times herein material, the president and sole stockholder of the petitioner was Burnette F. Stephenson, hereinafter for convenience, called Stephenson. In 1927 Stephenson purchased at a discount the vendor's interest in a "land contract" for the sale of a parcel of land with a church building thereon, made between Nathan Zacks and Mike Lerner, vendors, and Bethel African Methodist Episcopal Church, vendee. Under the provisions of the contract title to the premises remained in the vendor until the purchase price was completely paid. At the time of the purchase by Stephenson there was a balance due upon the land contract of $100,528.92. Legal title to the premises was transferred to Stephenson and a new contract was executed between Stephenson and the vendee. On August 29, 1927, Stephenson secured a loan of $50,000 from Griswold First State Bank and as security therefor executed a mortgage upon the church property in that amount. Up to 1931, Stephenson *197 had reduced the principal amount of the mortgage to $40,000 and the church had reduced the principal amount of the land contract to $95,928.92. In 1931 Stephenson's business had declined to about 10 per cent of its former volume and his indebtedness was heavy. In order to carry on through the depression he transferred certain realizable assets to the petitioner, among them the contract with the church. Stephenson also deeded the property covered by the contract to the petitioner, subject to the mortgage outstanding thereon. The record of this transaction on the petitioner's books included a credit to the account of Stephenson in the amount of $19,000. During 1931 and 1932 the church made interest payments totaling $4,170, but nothing was paid on the principal amount due. No payments of any kind were made from 1932 to 1935. In 1935 Stephenson became apprehensive about his liability on the mortgage. He realized that to protect his interests it would be necessary for the petitioner to foreclose on the land contract. He did not desire to see this happen, however, and an alternative arrangement was worked out whereby the petitioner deeded the property to the church in exchange for *198 the church's unsecured promissory note in the amount of $12,000 and its assumption of liability on the mortgage. The financial condition of the church did not improve after this transaction. The church found it increasingly difficult to meet the obligations represented by the mortgage and by the $12,000 note. A drive was inaugurated to secure funds to liquidate its indebtedness. As a result of such efforts, the church was able to make a payment of $1,000 on the note on June 24, 1935. Further payments totaling $550 were made in 1937 and 1938. No further payments were made, although numerous efforts at collection were made by telephone, correspondence, and personal visits. In 1939 the petitioner's officers suggested that the church refinance its obligations, either through the Reconstruction Finance Corporation or the Guardian Depositor's Corporation, the assignee of the mortgage, hereinafter called the bank. In accordance with this suggestion, negotiations were had between officials of the bank and of the church, as a result of which the bank agreed to loan the church the sum of $3,125. Upon being advised that this was the maximum amount which the bank would agree to loan the *199 church, Stephenson and J. F. McDonald, the petitioner's treasurer, conferred with an official of the bank in an effort to have the size of the loan increased. The bank refused to increase the loan and Stephenson then advised acceptance of it in settlement of the note, since he believed it would be a long time before the petitioner would receive any substantial payments. At that time Stephenson was indebted to the bank and the petitioner was indebted to Stephenson, each in amounts in excess of $3,125. In order to help effectuate the settlement, Stephenson, who already had anticipated his commitments to the bank, offered to have the money paid over to him by the petitioner in partial satisfaction of its obligation to him and that he in turn would pay it to the bank to be credited against his indebtedness. This was agreed to by the bank. Under the arrangements thus made, the bank loaned the church $3,125. This amount was credited to the account of the church on the petitioner's books in settlement of the latter's claim on the note.a like sum was credited to the account of the petitioner by Stephenson in partial satisfaction of its obligation to him. At the same time, pursuant to Stephenson's *200 authorization to the petitioner, the latter delivered the note to the bank, which thereupon reduced Stephenson's obligation to the bank to the extent of $3,125. The petitioner claimed a deduction for 1939 in the amount of $7,325, representing the balance due on the note, less the sum of $3,125. This amount was carried over to 1941 and included in its net operating loss deduction for that year. The deduction for 1941 was disallowed by the respondent. Opinion VAN FOSSAN, Judge: The respondent's determination against the petitioner include a determination of an over-assessment in excess profits tax for 1942 in the sum of $359.57. In so far as they relate to this over-assessment, the proceedings are dismissed for lack of jurisdiction. Pioneer Parachute Co., Inc., 4 T.C. 27Will County Title Co., 38 B.T.A. 1396. The sole issue in controversy is whether or not the petitioner is entitled to include in its net operating loss deduction for 1941 a loss in the sum of $7,325 alleged to have been sustained in 1939 and crried over from that year. The petitioner contends that it sustained a deductible loss in 1939 when it compromised for $3,125 the church's obligation *201 on the note and assigned the note to the bank. In the alternative it contends that the note obligation of the church in the amount of $10,450 became worthless in 1939 except for the realizable amount of $3,125. The respondent's position is that the transaction was essentially one between the petitioner and Stephenson and that the deduction of the loss is specifically prohibited by the provisions of section 24 (b)(1)(B) of the Internal Revenue Code. Section 24 (b)(1)(B) of the Code, the provisions of which are set forth below, [1] prohibits, with certain exceptions not here material, the deduction of losses from sales or exchanges of property directly or indirectly between an individual and a corporation more than 50 per cent of the value of the outstanding stock of which is owned, directly or indirectly, by or for such individual. *202 In the instant case, it is not disputed that Stephenson owned in excess of 50 per cent of the stock of the petitioner. The issue, therefore, is limited to the narrow question of whether or not the loss resulted "from sales or exchanges of property, directly or indirectly," between Stephenson and the petitioner. The facts clearly show that Stephenson completely dominated the petitioner. In 1931 he transferred to the petitioner both the church property and his interest in the land contract, along with certain other realizable assets, in order that he could carry on through the depression and avoid the possibility of being "tied up" by his creditors. Again, in 1935, Stephenson became apprehensive about his personal liability on the mortgage. It was his opinion that, in order to protect his own interests, it would be necessary for the petitioner to foreclose on the land contract. Because he did not want to see this happen, an arrangement was devised whereby the petitioner deeded the property to the church in exchange for the latter's note and its assumption of liability on the mortgage. From this it is evident that Stephenson had complete control over the petitioner and that he did *203 not hesitate to use it for reasons pertaining to his own personal business. With this background, we turn to the transaction which gives rise to the present controversy. Due to its inability to make substantial payments on the note the church, at the suggestion of the petitioner's officers, attempted to refinance its obligations. Negotiations were had which resulted in an agreement under which the bank loaned the church $3,125, which the church transferred to the petitioner in settlement of the latter's claim against it on the note. The petitioner received a credit from Stephenson in the sum of $3,125 on its indebtedness to him and Stephenson's obligation to the bank was credited in the same amount, reducing his personal obligation pro tanto. It does not appear that any cash actually passed at any stage of the proceedings. Apparently the whole transaction was consummated by means of credits. As a part of the transaction, the note was assigned to the bank by the petitioner. It was not canceled or destroyed. The respondent contends that the substance of the transaction was that the note was used to pay Stephenson's claim against the petitioner and then used by Stephenson to reduce *204 his liability to the bank. The petitioner, in opposition, contends that Stephenson had no individual interest in the property or the indebtedness after 1931 and that the transaction in 1939 was not a resale to him but a transaction between the petitioner and the church. The evidence concerning the disposition of the note, which is the very essence of the case before us, is inconsistent and confusing. The precise reason why the note was assigned to the bank was not brought out by the testimony at the hearing. Stephenson testified that he had no personal interest in the note after 1931. On cross-examination, however, he stated that in exchange for the note there was received a credit on his indebtedness to the bank of $3,125. Another witness, the petitioner's treasurer, testified that the note was delivered to the bank by the petitioner, pursuant to authorization by Stephenson, to be applied in the sum stated on Stephenson's obligation to the bank. Taking these statements at their face value, it would appear that the only purpose of the assignment of the note to the bank was the reduction of Stephenson's personal liability. Under such a view, the transaction would be tantamount to *205 a sale of the note by the petitioner to Stephenson and by him to the bank and would clearly fall within the provisions of the cited section of the Code. We think no useful purpose could be served by discussing the evidence further. In view of the unsatisfactory nature of the testimony, coupled with the complete domination and control of the petitioner by Stephenson, as shown in the record, we are unable to say that the respondent erred in his determination. It is not within our province to fill gaps in the evidence. Petitioner had the burden of proof and it was its obligation to show error on the part of the respondent. In our opinion this burden has not been discharged. Consequently we must sustain the respondent. Decision will be entered under Rule 50. Footnotes
1. SEC. 24. ITEMS NOT DEDUCTIBLE. * * *
(b) Losses From Sales or Exchanges of Property. - (1) Losses Disallowed. - In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly - * * *
(B) Except in the case of distributions in liquidation, between an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual. * * *↩